DRUMMOND LAW FIRM, P.C.
Craig W. Drummond, Esq.
Nevada Bar No. 11109
228 S Fourth Street, First Floor
Las Vegas, NV 89101
T: (702) 366-9966
F: (702) 508-9440
Craig@DrummondFirm.com
Attorney for Defendant

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:12-cr-440-RCJ-(GWF) |
| | ) | |
| vs. | ) | |
| | ) | |
| KIMBERLY FLORES, | ) | **DEFENDANT'S MOTION TO RE-OPEN THE SENTENCING HEARING TO CORRECT CLEAR ERROR** |
| | ) | |
| Defendant. | ) | **[Expedited Hearing Requested]** |
| | ) | |

COMES NOW Defendant, KIMBERLY FLORES, by and through her attorney of record, CRAIG W. DRUMMOND, ESQ., and hereby moves this Honorable Court to Re-Open the Sentencing Hearing in this matter and modify the Final Order of Forfeiture to remove the *in personam* criminal forfeiture money judgment of $5,200,000.00 against the Defendant.

This motion is made and based on the enclosed affidavit of counsel, Points and Authorities, all pleadings and papers on file herein and any oral argument requested by the Court at the time of hearing.

An Expedited Hearing is requested because the United States is now in possession of an *in personam* criminal forfeiture money judgment against the Defendant that was obtained in error. Given the unknowns of what the government is planning to do with this money judgment in the near future an Expedited Hearing is requested to resolve and address this issue.

DRUMMOND LAW FIRM
228 South Fourth St., First Floor
Las Vegas, NV 89101
www.DrummondFirm.com

**I.**

**STATEMENT OF FACTS**

On March 19, 2015, the Defendant, Ms. Kimberly Flores, was sentenced.  As outlined below as the sentencing hearing was already taking place and Assistant United States Attorney walked to defense counsel's table, presented FOR THE FIRST TIME a Final Order of Forfeiture and stated words to the effect "this is what your client already agreed to."  See Exhibit A. Thereafter, while sentencing was ongoing defense counsel looked through the Final Order of Forfeiture regarding the money and property seized and all appearing in order did not object to the language based on the limited time to review and the representations by the Assistant United States Attorney that it reflected what was previously agreed to by the Defendant.  Thereafter, almost immediately after sentencing defense counsel reviewed the terms of the Plea Agreement and noted that Ms. Flores NEVER AGREED or CONTRACTED with the United States for an *in personam* criminal forfeiture money judgment of $5,200,000.00.  For some unknown reason, the United States included this judgment in the Final Order of Forfeiture in the middle of listing the property seized.  See Exhibit A, P. 3:3-4.  In fact, the Plea Agreement actually only authorized such an *in personam* criminal forfeiture money judgment against Defendant Charles Horky.  See Exhibit B, P.  18:1-4.  Thus, the present motion is being immediately filed to correct this error in the sentencing of Ms. Flores.

**II.**

**AFFIDAVIT AND DECLARATION OF COUNSEL**
**IN SUPPORT OF MOTION FOR RECONSIDERATION**

STATE OF NEVADA          )
                         } ss:
COUNTY OF CLARK          )

CRAIG W. DRUMMOND, ESQ, being first duly sworn, deposes and says:

1.     That I am a duly licensed practicing attorney in the State of Nevada, County of Clark, maintaining an office at Drummond Law Firm, P.C. 228 South Fourth St., First Floor, Las Vegas, Nevada 89101, and am the CJA attorney of record for Defendant in the above entitled matter.

2.  On March 19, 2015, the Defendant, Ms. Kimberly Flores, was sentenced.

DRUMMOND LAW FIRM
228 South Fourth St., First Floor
Las Vegas, NV 89101
www.DrummondFirm.com

3. That while the sentencing hearing was already taking place an Assistant United States Attorney walked to affiant defense counsel's table, and presented FOR THE FIRST TIME, a Final Order of Forfeiture and stated words to the effect to defense counsel "this is what your client already agreed to."

4. That prior to the sentencing on March 19, 2015, a proposed Final Order of Forfeiture was NEVER PREVIOUSLY PROVIDED to the Defendant or defense counsel for review.

5. That while sentencing was ongoing affiant defense counsel looked through the Final Order of Forfeiture regarding the money and property seized and all appearing in order did not object to the language based on the limited time to review and the representations by the Assistant United States Attorney that it reflected what was previously agreed to by the Defendant.

6. Thereafter, almost immediately after sentencing, affiant defense counsel reviewed the terms of the Plea Agreement and noted that Ms. Flores NEVER AGREED or CONTRACTED with the United States for an *in personam* criminal forfeiture money judgment of $5,200,000.00.

7. Affiant defense counsel has no idea why United States included this judgment in the Final Order of Forfeiture in the middle of listing the property seized as this WAS NEVER DISCUSSED between parties during negotiations, and IS CONTRARY TO THE TERMS OF THE PLEA AGREEMENT. See Exhibit A, P. 3:3-4.

8. That affiant defense counsel is not implying or alleging that the United States intentionally misrepresented the terms of the Final Order of Forfeiture or engaged in unethical activity, but rather that his representations about the content of the Plea Agreement were clearly wrong and in error.

9. The Plea Agreement in this case actually only authorized such an *in personam* criminal forfeiture money judgment against Defendant Charles Horky. See Exhibit B, P. 18:1-4.

10. That an Expedited Hearing is requested because the United States is now in possession of an in personam criminal forfeiture money judgment against the Defendant that was obtained in error. Given the unknowns of what the government is planning to do with this money judgment in the near future an Expedited Hearing is requested to resolve and address this issue.

1      10.     I sign and declare under penalty of perjury that the above statement is true and

2   correct.

3

4



5   CRAIG W. DRUMMOND, ESQ.
    Nevada Bar No. 011109

6

7   NOTARIZATION

8

9   Subscribed and Sworn to me on this *19* of March, 2015.

10

11

12   NOTARY PUBLIC

**TESS RECINTO**
Notary Public-State of Nevada
APPT. NO. 12-9634-1
My App. Expires December 11, 2016

13

14                              **III.**

15                              **LAW**

16      Under Federal Rule of Criminal Procedure 35(a), "within 14 days after sentencing, the

17   court may correct a sentence that resulted from arithmetical, technical, or other clear error."

18      Based upon the above affidavit of counsel, there was clear error in signing an *in personam*

19   criminal forfeiture money judgment of $5,200,000.00 when this was not agreed upon between the

20   parties, inconsistent with the Plea Agreement, and clearly agreed to in error by counsel during

21   sentencing when counsel had seconds to review the proposed Final Order of Forfeiture and

22   counsel for the government orally represented to defense counsel that the Forfeiture contained the

23   terms of the Plea Agreement – when in fact it did not.

24

25

26   //

27

28

//

DRUMMOND LAW FIRM
228 South Fourth St., First Floor
Las Vegas, NV 89101
www.DrummondFirm.com

1

## IV.

## CONCLUSION

WHEREFORE, the Defendant requests this Honorable Court re-open the Sentencing Hearing in this matter pursuant to Federal Rule of Criminal Procedure 35(a) and modify the Final Order of Forfeiture to remove the *in personam* criminal forfeiture money judgment of $5,200,000.00

DATED this ___19___ of March, 2015.

DRUMMOND LAW FIRM, P.C.
Craig W. Drummond, Esq.
Nevada Bar No. 11109
228 S Fourth Street, First Floor
Las Vegas, NV 89101
T: (702) 366-9966
F: (702) 508-9440
Craig@DrummondFirm.com
Attorney for Defendant

ORDER

IT IS SO ORDERED this 25th day of March, 2015.

ROBERT C. JONES

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the _19_ day of March 2015, the undersigned served the

foregoing DEFENDANT'S MOTION TO RE-OPEN THE SENTENCING HEARING TO

CORRECT CLEAR ERROR on all counsel of record pursuant the CM/ECF filing system

_____

An Employee of the DRUMMOND LAW FIRM

# Exhibit A

1
2
3
4
5
6              **UNITED STATES DISTRICT COURT**

7                   **DISTRICT OF NEVADA**

8   UNITED STATES OF AMERICA,                    )
                                                 )
9                    Plaintiff,                  )
                                                 )
10                   v.                          )    2:12-CR-440-RCJ-(GWF)
                                                 )
11  KIMBERLY FLORES,                             )
                                                 )
12                   Defendant.                  )
    _____            )

13                   **FINAL ORDER OF FORFEITURE**

14         On July 16, 2014, the United States District Court for the District of Nevada entered a

15  Preliminary Order of Forfeiture pursuant to Fed. R. Crim. P. 32.2(b)(1) and (2); Title 18, United States

16  Code, Section 1963(a)(1), (a)(2), (a)(3), and (m); Title 18, United States Code, Section 981(a)(1)(C)

17  and Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p)

18  based upon the plea of guilty by defendant KIMBERLY FLORES to the criminal offense, forfeiting

19  the property set forth in the Plea Agreement, the Bill of Particulars, and the Forfeiture Allegation of

20  the Indictment and shown by the United States to have the requisite nexus to the offense to which

21  defendant KIMBERLY FLORES pled guilty.  Indictment, ECF No. 1; Bill of Particulars, ECF No. 92;

22  Change of Plea, ECF No. 172; Preliminary Order of Forfeiture, ECF No. 177; Plea Agreement, ECF

23  No. 187.

24         This Court finds the United States of America published the notice of forfeiture in accordance

25  with the law via the official government internet forfeiture site, www.forfeiture.gov, consecutively

26  from July 23, 2014, through August 21, 2014, notifying all potential third parties and notified known

third parties by personal service or by regular mail and certified mail return receipt requested, of their right to petition the Court. Notice of Filing Proof of Publication, ECF No. 185.

Bank of George, T. Ryan Sullivan, President was personally served with the Notice and Preliminary Orders of Forfeiture on August 19, 2014, by the United States Marshals Service.  Notice of Filing Service of Process, ECF No. 184, p. 3-17.

Bank of George, Alan C. Sklar, Registered Agent was personally served with the Notice and Preliminary Orders of Forfeiture on August 19, 2014, by the United States Marshals Service.  Notice of Filing Service of Process, ECF No. 184, p. 18-32.

CT Corporation, Registered Agent for American Express Company was served via regular and certified mail with the Notice and Preliminary Orders of Forfeiture on August 8, 2014.  Notice of Filing Service of Process - Mailing, ECF No. 200, p. 2-20.

Kenneth I. Chenault, Chairman and CEO of American Express Company was served via regular and certified mail with the Notice and Preliminary Orders of Forfeiture on September 4, 2014. Notice of Filing Service of Process - Mailing, ECF No. 200, p. 2-16, 21-24.

This Court finds no petition was filed herein by or on behalf of any person or entity and the time for filing such petitions and claims has expired.

This Court finds no petitions are pending with regard to the assets named herein and the time for presenting such petitions has expired.

THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that all right, title, and interest in the property hereinafter described is condemned, forfeited, and vested in the United States of America pursuant to Fed. R. Crim. P. 32.2(b)(4)(A) and (B); Fed. R. Crim. P. 32.2(c)(2); Title 18, United States Code, Section 1963(a)(1), (a)(2), (a)(3), and (m); Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(n)(7) and (p) and shall be disposed of according to law:

1.  Twenty-five thousand eight hundred seventy-three dollars and ten cents ($25,873.10) in United States Currency; and

2

2. Seven thousand dollars ($7,000) in United States Currency (all of which constitutes "property"); and

3. an *in personam* criminal forfeiture money judgment of $5,200,000 in United States Currency including:

   a. One (1) stainless steel Rolex Oyster Perpetual Date Submariner, black dial and bezel, 40mm, Movement #31867604, Model #16610 T, Serial Z840628, 134 grams;

   b. One (1) 18k yellow gold IWC Schaffhausen chronograph automatic wristwatch with leather, stamped on back 2684354 INTERNATIONAL WATCH CO., two sub dials, 41 mm case, 104.6 grams;

   c. One (1) 18k yellow gold Rolex Oyster Perpetual Superlative Chronometer Cosmograph Daytona wristwatch and band, Serial #K258882, Model #116528, Band #78498, movement #C 0255271, white dial with three white sub dials having gold bezels, 39mm case, 179.3 grams;

   d. One (1) 18k yellow gold Cartier Pasha Chronograph date wristwatch with leather band with 18k fold-over hidden clasp, Case #319453MG, presentation back, 38.4mm case, white dial with three sub dials and date, 108.8 grams;

   e. One (1) stainless steel Girard-Perregaux Ferrari Chronograph wristwatch with leather band, stamped on back with Girard-Perregaux, Ferrari, AN 853 Ref 8020, Manufacture specialement pour FERRARI, black dial with prancing horse, three black sub dials and a date window, luminous hour markers and hands, 38mm case, 72.8 grams; and

   f. Any and all ownership interest that defendant may hold in CLS Nevada, LLC, and any licenses, certificates or medallions held or used by CLS or any affiliated.

   IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any and all forfeited funds, including but not limited to, currency, currency equivalents, certificates of deposit, as well as any income derived as a result of the United States of America's management of any property forfeited herein, and the proceeds from the sale of any forfeited property shall be disposed of according to law.

3

1       The Clerk is hereby directed to send copies of this Order to all counsel of record and three

2 certified copies to the United States Attorney's Office.

3 DATED this ___ day of March, 2015.

4

5

6

7                                                         UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# Exhibit B



1  Daniel G. Bogden
   United States Attorney
2    District of Nevada
   Timothy S. Vasquez
3    Assistant United States Attorney
   333 Las Vegas Boulevard South, Suite 5000
4  Las Vegas, Nevada 89101
   702-388-6336

5

6              UNITED STATES DISTRICT COURT
7                  DISTRICT OF NEVADA
                        -oOo-
8

9  UNITED STATES OF AMERICA,

10         Plaintiff                    Case No.  2:12-CR-440-RCJ-GWF

11    vs.
                                        PLEA AGREEMENT UNDER
12  [2] KIMBERLY FLORES,                FED.R.CRIM.P. 11 (c)(1)(A & B)

13         Defendant

14         THE UNITED STATES OF AMERICA, by the United States Attorney and undersigned

15  Assistant United States Attorney, and defendant KIMBERLY FLORES, with the advice and

16  counsel of her undersigned attorney, submit this Plea Agreement pursuant to Fed.R.Crim.P.

17  11(c)(1)(A and B).

18

19  **I.  SCOPE OF AGREEMENT**

20         The parties to this Plea Agreement are the UNITED STATES OF AMERICA and

21  KIMBERLY FLORES, the defendant.  This Plea Agreement binds defendant and the United

22  States Attorney's Office for the District of Nevada.  It does not bind any other prosecuting,

23  administrative, or regulatory authority, the United States Probation Office, or the Court.  The

24  Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the

1  Plea Agreement and applicable sentences, fines, restitution and forfeiture.  It does not control or

2  prohibit the UNITED STATES or any agency or third party from seeking any other civil or

3  administrative remedies directly or indirectly against defendant.

4

5  **II.  DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS**

6    **A.    Guilty Plea:**  Defendant knowingly and voluntarily agrees to plead guilty to the

7  charge that she conspired with others to conduct, or to participate in the conduct of, an

8  enterprise engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) as set

9  forth in Count One of the indictment in this case.   The Defendant also agrees to the forfeiture of

10  the property set forth in this Plea Agreement, the Bill of Particulars, and the Forfeiture

11  Allegations of the Indictment.

12    **B.    Waiver of Trial Rights:**  Defendant understands that she is presumed innocent

13  and has the right to maintain her plea of not guilty and require that the government prove her

14  guilt beyond a reasonable doubt at trial.   Defendant acknowledges that she has been advised

15  and understands that by entering a plea of guilty she is waiving – that is, giving up – her right to

16  a trial and related rights guaranteed to all defendants by the Constitution and laws of the United

17  States. Specifically, defendant is giving up:

18        (1)  The right to trial by jury (or to a trial by a judge if the parties both were to so

19            agree);

20        (2)  The right to confront and cross-examine the witnesses against her at trial;

21        (3)  The right to remain silent with assurance that her silence could not be used

22            against her in any way;

23        (4)  The right to testify in her own defense at trial if she so chooses;

24        (5)  The right to compel witnesses to appear at trial and testify in her behalf; and

2

1    (6) The right to have the assistance of an attorney at all stages of such proceedings.

2    **C.    Withdrawal of Guilty Plea**: Defendant will not seek to withdraw her guilty

3    plea after she has entered it in court.

4    **D.    Additional Charges**: Provided that defendant fulfills all of her promises and

5    responsibilities under this Plea Agreement, the UNITED STATES agrees to move to dismiss

6    any additional charges pending against defendant in this case at the time of sentencing, and

7    agrees not to bring additional charges against defendant arising out of the investigation in the

8    District of Nevada which culminated in this Plea Agreement and based on conduct known to the

9    United States Attorney's Office for the District of Nevada with the exception of charges

10   pertaining to any crimes of violence.  The UNITED STATES expressly reserves the right to

11   bring charges for any additional crime of violence as defined in 18 U.S.C. § 16.

12

13   **III.  ELEMENTS OF THE OFFENSE**

14   Count One of the indictment charges that during the span from September 2008 through

15   November 2012, defendant conspired with others, known and unknown, to conduct and

16   participate, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of

17   racketeering activity in violation of 18 U.S.C. § 1962(d).  This offense has two elements:

18   First, a conspiracy or agreement, as generally described in the Indictment,

19   existed between two or more persons to conduct or participate in the affairs of an

20   enterprise that was (or would have) engaged in or affected interstate or foreign

21   commerce; and

22   Second, the defendant joined or became a member of the conspiracy with

23   knowledge of its purposes and that someone (not necessarily the defendant)

24   would conduct the enterprise's affairs, or participate, directly or indirectly, in the

3

1      conduct of the enterprise's affairs, through a pattern of racketeering activity, that

2      is, at least two racketeering acts.

3  *See Salinas v. United States*, 522 U.S. 52, 63-65 (1997); *United States v. Glecier*, 923 F.2d 496,

4  499 (7th Cir.1991); *United States v. Harris*, 695 F.3d 1125, 1131-33 (10th Cir. 2012); 18 U.S.C.

5  §§ 1961(1), 1961(5), 1962(c), and 1962(d). *See also* NINTH CIR. MODEL CRIMINAL JURY

6  INSTRUCTION 8.20 (2010 ed.).

7

8  **IV.  FACTS SUPPORTING GUILTY PLEA**

9      **A.**     Defendant will plead guilty because she is, in fact and under the law, guilty of

10  the crimes charged.

11      **B.**     Defendant acknowledges that if she elected to go to trial instead of pleading

12  guilty, the UNITED STATES could prove her guilt beyond a reasonable doubt and establish its

13  right to forfeit the specified property by preponderance of the evidence.  Defendant further

14  acknowledges that her admissions and declarations of fact set forth below satisfy every element

15  of the charged offenses.

16      **C.**     Defendant waives any potential future claim that the facts she admitted in this

17  Plea Agreement were insufficient to satisfy the elements of the charged offenses.

18      **D.**     Defendant admits and declares under penalty of perjury that the facts set forth

19  below are true and correct.

20      (1)   CLS Nevada, LLC, is a Nevada Limited Liability Company.  Doing business as

21          "CLS Transportation, Las Vegas," CLS Transportation operated limousines and

22          provided limousine services in and around Las Vegas, Nevada.  CLS Nevada,

23          LLC, and its managers, employees and associates constituted an enterprise as

24          defined by 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact,

4

1    which enterprise was engaged in and the activities of which affected interstate

2    and foreign commerce.

3    (2)   At all times material to the indictment, [2] KIMBERLY FLORES was employed

4    as an office manager at CLS Transportation.  [1] CHARLES HORKY owned and

5    was the managing member of CLS Nevada, LLC.

6    (3)   Members of the enterprise combined and conspired to exploit CLS

7    Transportation's position as a limousine service to conduct and facilitate a broad

8    range of criminal activities.

9    (4)   Several of CLS Transportation's limousine drivers distributed controlled

10   substances from CLS Transportation's limousines in violation of 21 U.S.C. §

11   841(a).  Although HORKY did not directly participate in the distribution of

12   controlled substances, he employed and retained drivers knowing that they were

13   distributing controlled substances from CLS Transportation's vehicles.  Further,

14   HORKY required certain CLS Transportation's drivers engaging in illicit

15   activities to pay him fees or surcharges ranging from hundreds to several

16   thousand dollars per week.

17   (5)   Further, several members of the enterprise used CLS Transportation, the wire,

18   and other instruments and conduits of interstate commerce, to promote, conduct,

19   facilitate, and distribute proceeds from prostitution in Clark County, Nevada, a

20   crime under Nevada law,[1] in violation of 18 U.S.C. §§ 1952(a)(1) and

21   1952(a)(3).  HORKY directly participated in procuring prostitutes for CLS

---

[1] Under the laws of the State of Nevada, "[i]t is unlawful for any person to engage in prostitution or solicitation therefor, except in a licensed house of prostitution." Nevada Revised Statutes § 201.354. Although a county with a population of less than 700,000 (or, until June 2011, less than 400,000) are permitted to license brothels, *see* Nevada Revised Statutes § 244.345, the population of Clark County, Nevada, has exceeded that limit at all times material to this indictment.  Moreover, Clark County ordinance 12.08.015 expressly prohibits prostitution.

1    Transportation's customers.  Further, patrons occasionally paid for prostitution

2    services with credit cards, and members and associates of the enterprise used

3    CLS Transportation's accounts and the wire to process those credit card charges

4    and distribute the proceeds of that unlawful activity.

5  (6) The leaders and managers of the enterprise (including [1] CHARLES HORKY

6    and [2] KIMBERLY FLORES) engaged in access device fraud for purposes of

7    perpetuating and sustaining the enterprise.  CLS Transportation and its

8    employees and associates offered limousines for hire and routinely provided

9    transportation to its customers for a fee.  Customers often paid for those services

10    with credit cards or other access devices.   Such charges were processed in the

11    offices of CLS Transportation and transmitted to American Express and its

12    processing agents by means of the interstate wire.

13  (a) The conspirators devised and executed a scheme to defraud American

14     Express and American Express card-holders and to obtain money by

15     means of false and fraudulent pretenses and representations.   As part of

16     this scheme, the defendants obtained American Express access devices

17     and account numbers from customers of CLS Transportation.  In addition

18     to the charges authorized by such customers, the defendants used the

19     American Express cards and account numbers to fraudulently conduct

20     unauthorized transactions under the pretense that the additional charges

21     had been authorized. The fraudulent charges were processed in the same

22     manner as authorized charges; the fraudulent charges were transmitted by

23     the defendants from CLS Transportation's office in Las Vegas, Nevada,

24     to American Express and its processing agents by means of the interstate

6

1       wire.  In this manner, the defendants fraudulently obtained more than

2       $2,800,000 from American Express by means of false and fraudulent

3       pretenses and representations and defrauded American Express and

4       multiple American Express card-holders in violation of 18 U.S.C. §§

5       1029(a)(5) and 1343.

6       (b)    Many of the defrauded American Express card-holders contested the

7       fraudulent charges.  After contacting CLS Transportation in an attempt to

8       verify contested charges, American Express frequently executed "charge-

9       backs" to recover money fraudulently paid to CLS Transportation and

10       notified management of CLS Transportation of the fraudulent

11       transactions.  Despite such notifications and charge-backs, the fraudulent

12       transactions continued unabated.   In light of the recurring fraudulent

13       transactions from CLS Transportation, American Express eventually

14       cancelled CLS Transportation's merchant account.  Defendants [1]

15       CHARLES HORKY and [3]ARCHIE GRANATA combined and

16       conspired with one another and others to circumvent American Express's

17       counter-measures and perpetuated the enterprise by fraudulently opening

18       successive additional American Express merchant accounts under false

19       names, aliases and nominees.  The conspirators did not process fraudulent

20       charges through these surreptitiously opened American Express accounts.

21    (7)   The defendants also combined and conspired to fraudulently obtain money to

22       meet short-term deficiencies through bank fraud in violation of 18 U.S.C. §

23       1344.  More particularly, the members and associates of the enterprise combined

24       and conspired to fraudulently obtain unauthorized sums of money from the Bank

1    of George (a financial institution insured under the Federal Deposit Insurance

2    Act) through a check-kiting scheme.[2]

3    (a)   As part of that check-kiting scheme, leaders and managers of the

4    enterprise issued scores of checks drawn on CLS Transportation's payroll

5    accounts at the Bank of George knowing that those accounts did not

6    contain sufficient funds for payment of those checks.

7    (b)   Although drawn from CLS Transportation's payroll accounts and

8    commonly made payable to employees and associates of CLS

9    Transportation, these checks were not for payment of wages or salaries.

10    Rather, these additional checks were issued to multiple employees and

11    associates of CLS Transportation who agreed as part of the scheme to

12    cash the checks (typically at a casino) and return the proceeds to the

13    management and leaders of the enterprise.

14    (c)   Upon receiving the proceeds from checks cashed without sufficient

15    funds, the leaders and managers of the enterprise deposited, or caused

16    CLS Transportation's employees and associates to deposit, the proceeds

17    into CLS's Transportation's bank accounts to cover pre-existing

18    deficiencies and prior checks.  In this manner and as part of this scheme,

19    the defendants knowingly issued themselves and their associates

20    thousands of checks drawn on a Bank of George account without

21    sufficient funds to honor those checks, in effect taking hundreds of

22    successive unauthorized loans from the Bank of George.

---

[2]   The Office of the Comptroller of the Currency in its Policy Guidelines for National Bank Directors has defined check-kiting as "a method whereby a depositor ...utilizes the time required for checks to clear to obtain an unauthorized loan without any interest charge."

(8)   Defendant affirmatively admits that CLS Transportation and its managers,
employees and associates constituted an enterprise as defined by 18 U.S.C. §
1961(4), to wit: a group of individuals associated in fact, and that the enterprise
was engaged in, and its activities affected, interstate commerce.   Defendant
further admits that she conspired with others to conduct, and to participate in the
conduct of, the enterprise's affairs through at least two acts of racketeering
activity within the span pattern of racketeering activity.   Defendant joined or
became a member of the conspiracy with knowledge of its purposes and that
someone (not necessarily the defendant) would conduct the enterprise's affairs,
or participate, directly or indirectly, in the conduct of the enterprise's affairs,
through a pattern of racketeering activity comprised of at least two acts of
racketeering activity.

(11)   Defendant admits that the property listed in Section X is: an interest acquired
or maintained from his criminal violations, or an interest in; security of; claim
against; or property or contractual right of any kind affording a source of
influence over; any enterprise which she established, operated, controlled,
conducted, or participated in the conduct of her criminal violations, or any
property constituting, or derived from, any proceeds obtained, directly or
indirectly, from racketeering activity or unlawful debt collection in her criminal
violations.

## V.   COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against
defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose.   If defendant does

9

1  not plead guilty or withdraws her guilty pleas, the facts set forth in Section IV of this Plea

2  Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting

3  any evidence, argument or representation offered by or on defendant's behalf.  Defendant

4  expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use

5  of the facts set forth in Section IV of this Plea Agreement.

6

7  **VI.  APPLICATION OF SENTENCING STATUTES**

8      **A.**    **Maximum Penalty:**  The statutorily authorized penalty for a conspiracy to

9  conduct, or participate in the conduct, of an enterprise's affairs through a pattern of racketeering

10  activity in violation of 18 U.S.C. § 1962(d) as charge in Count One includes: a term of

11  imprisonment of not more than 20 years, *see* 18 U.S.C. § 1963; forfeiture, 18 U.S.C. § 1963;and

12  a fine of not greater than twice the gross loss or, alternatively, not more than $250,000, *see* 18

13  U.S.C. § 3571(b).

14      **B.**    **Factors Under 18 U.S.C. § 3553:**  The Court must consider the factors set forth

15  in 18 U.S.C. § 3553(a) in determining defendant's sentence.  However, the statutory maximum

16  sentence and any statutory minimum sentence limit the Court's discretion in determining

17  defendant's sentence.

18      **C.**    **Supervised Release:**  In addition to imprisonment and a fine, defendant will be

19  subject to a term of supervised release not to exceed three (3) years for each count of

20  conviction.  *See* 18 U.S.C. § 3583(b)(2).  Supervised release is a period of time after release

21  from prison during which defendant will be subject to various restrictions and requirements.  If

22  defendant violates any condition of supervised release, the Court may order defendant's return

23  to prison for all or part of the term of supervised release, which could result in defendant

24

10

1  serving a total term of imprisonment greater than the statutory maximum prison sentence

2  identified above.

3      **D.**    **Special Assessment:**  Defendant will pay a $100.00 special assessment per count

4  of conviction at the time of sentencing.

5

6  **VII.  APPLICATION OF SENTENCING GUIDELINES PROVISIONS**

7      **A.**    **Discretionary Nature of Sentencing Guidelines:**  Defendant acknowledges that

8  the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing

9  Guidelines") in determining defendant's sentence, but that the Sentencing Guidelines are

10  advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to

11  the maximum term of imprisonment permitted by statute.

12      **B.**    **Offense Level Calculations:**  The parties stipulate to and jointly recommend the

13  following calculation of the defendant's Offense Level under the Sentencing Guidelines.  The

14  parties agree that they will not seek to apply any other specific offense characteristics,

15  enhancements or reductions.  Further, the defendant expressly understands and acknowledges

16  that neither these stipulations nor the Sentencing Guidelines bind the Court.  Further, defendant

17  affirmatively acknowledges that the Court may impose any sentence within the statutory

18  maximum notwithstanding any applicable Sentencing Guidelines provisions.

19      Section 2E1.1 of the Sentencing Guidelines instructs that the Base Offense level for the

20  violation of 18 U.S.C. § 1962 charged in Count One of the indictment is either Level 19 or the

21  offense level applicable to the underlying racketeering activity, whichever is greater.  In this

22  case, while the conspiracy involved a range of racketeering activities, the parties agree that the

23  most serious underlying offenses were bank fraud and wire fraud.  The offense level for those

24  underlying racketeering activities exceeds Level 19 as assessed under Sentencing Guidelines §

11

1    2B1.1.   The parties therefore agree and recommend that defendant's Base Offense Level is to

2    be assessed under § 2B1.1 of the Sentencing Guidelines as follows.

3         (1)   Base Offense Level:        7                 [USSG § 2B1.1(a)]

4              Section 2B1.1(a) of the Sentencing Guidelines instructs that where the offense of

5              conviction has a statutory maximum term of imprisonment of 20 years of more,

6              the Base Offense Level is 7.  In this case, defendant's violation of 18 U.S.C. §

7              1962(d) has a statutory maximum term of imprisonment of 20 years resulting in

8              a Base Offense Level of 7.

9         (2)   Specific Offense Characteristics:

10             (a)   Amount of Actual and Intended Loss:  + 18        [USSG §2B1.1(b)(1)]

11                   The government could prove, and defendant admits for purposes of this

12                   plea agreement, that the conspiracy involved foreseeable losses and

13                   attempted losses in excess of $2,500,000, but less than $7,500,000,

14                   warranting an 18 Level increase to defendant's Base Offense Level under

15                   Sentencing Guidelines § 2B1.1(b)(1).

16             (b)   Victims:                          + 0        [USSG § 2B1.1(b)(2)]

17                   Although members of the enterprise fraudulently used credit card account

18                   numbers issued to hundreds of individuals, the identified fraudulent

19                   transactions all resulted in charge-backs without financial loss to those

20                   individuals.  For purposes of this plea agreement, the parties agree and

21                   stipulate that the conspiracy had two identifiable victims (American

22                   Express and Bank of George) who were exposed to financial loss.  The

23                   parties accordingly recommend that no enhancement is warranted under

24                   Sentencing Guidelines § 2B1.1(b)(2).

1      (c)  <u>Sophisticated Means:</u>     + 0   [USSG § 2B1.1(b)(10)]

2      The parties agree and stipulate for the limited purposes of this Plea

3      Agreement that defendant's offense were not substantially more

4      sophisticated than other instances of bank fraud, wire fraud and other

5      financial crimes that are also assessed under Sentencing Guidelines §

6      2B1.1.  The parties therefore recommend that no enhancement is

7      warranted under Sentencing Guidelines § 2B1.1(b)(10).

8    (3) <u>Role:</u>    + 0       [USSG §§ 3B1.1 & 3B1.2]

9      The parties stipulate for the purposes of this Plea Agreement that defendant was

10      not less culpable than most of the other participants and therefore a Mitigating

11      Role adjustment is not warranted.  The parties further stipulate for purposes of

12      this Plea Agreement that an Aggravating Role adjustment is not warranted

13      because this defendant performed tasks in furtherance of the conspiracy at the

14      direction and under the control of [1] CHARLES HORKY.

15    (4) <u>Acceptance of Responsibility:</u>  - 3      [USSG § 3E1.1]

16      Pursuant to § 3E1.1(a) of the Sentencing Guidelines, the UNITED STATES will

17      recommend that defendant receive a two-level downward adjustment for

18      acceptance of responsibility unless she:

19      (a)   Fails to truthfully admit facts establishing a factual basis for the guilty

20           plea when she enters the plea;

21      (b)   Fails to truthfully admit facts establishing the amount of restitution owed

22           when she enters her guilty plea;

23      (c)   Fails to truthfully admit facts establishing the forfeiture allegations when

24           she enters her guilty plea;

1        (d)    Provides false or misleading information to the UNITED STATES, the

2              Court, Pretrial Services, or the Probation Office;

3        (e)    Denies involvement in the offense or provides conflicting statements

4              regarding her involvement or falsely denies or frivolously contests

5              conduct relevant to the offense;

6        (f)    Attempts to withdraw her guilty plea;

7        (g)    Commits or attempts to commit any additional crime;

8        (h)    Fails to appear in court; or

9        (i)    Violates any condition of pretrial release.

10   Further, the UNITED STATES will move for an additional one-level downward

11   adjustment for timely acceptance of responsibility under §3E1.1(b) of the

12   Sentencing Guidelines provided that defendant communicates her decision to

13   plead guilty in a sufficiently timely manner to allow the UNITED STATES to

14   avoid preparing for trial and to efficiently allocate its resources.

15   (5)   Joint Negotiations and Package Plea Agreements:   -3

16   The defendant has knowingly and of her own accord and tactical judgment,

17   chosen to join with her co-defendants [2] KIMBERLY FLORES and [3]

18   ARCHIE GRANATA in negotiating this plea agreement with the government as

19   part of a package plea in the interest of conserving government and judicial

20   resources. *See generally United States v. Caro*, 997 F.2d 657, 658-59 (9th

21   Cir.1993) (package plea agreements are permissible but they pose an additional

22   risk of coercion not present when the defendant is dealing with the government

23   alone requiring that trial court make a more careful examination of the

24   voluntariness of a guilty plea).  While the guilty plea of a single defendant would

14

1          not significantly alter the burden of production at trial, guilty pleas from these

2          three defendants would relieve the government of producing evidence pertaining

3          to the financial crimes and conserve judicial and government resources.

4          Therefore, if [1] CHARLES HORKY, [2] KIMBERLY FLORES and [3]

5          ARCHIE GRANATA all plead guilty pursuant to the parties' joint negotiations,

6          the UNITED STATES will recommend a 3 Level reduction for each of them.

7     (7)  <u>Total Offense Level:</u>                    <u>19</u>

8          The parties agree that no other offense characteristics, enhancements or

9          adjustments are applicable under the Sentencing Guidelines, and neither party

10         will request or present evidence to support Sentencing Guideline calculations not

11         contained in this plea agreement.  The Sentencing Guidelines calculations

12         recommended by the parties, if adopted and applied by the Court, would result in

13         a Total Offense Level of 19 if defendant is awarded a full 3 Levels for

14         Acceptance of Responsibility and a 3 Level reduction for a package plea.

15    **C.**    <u>**Criminal History Category**</u>:  Defendant acknowledges that the Court may base

16  her sentence in part on her criminal record or Criminal History.  The parties have not entered

17  into a stipulation regarding her Criminal History, and defendant understands and acknowledges

18  that the Court will determine her Criminal History Category under the Sentencing Guidelines.

19    **D.**    <u>**Relevant Conduct**</u>:  The Court may consider any counts dismissed under this

20  Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining

21  the applicable Sentencing Guidelines range and whether to depart from that range.

22    **E.**    <u>**Additional Sentencing Information**</u>:  The stipulated Sentencing Guidelines

23  calculations are based on information now known to the parties.  The parties may provide

24  additional information to the United States Probation Office and the Court regarding the nature,

15

1   scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or

2   circumstances.  Good faith efforts to provide truthful information or to correct factual

3   misstatements shall not be grounds for defendant to withdraw her guilty plea.

4           Defendant acknowledges that the United States Probation Office may calculate the

5   Sentencing Guidelines differently and may rely on additional information it obtains through its

6   investigation.  Defendant also acknowledges that the Court may rely on this and other additional

7   information as it calculates the Sentencing Guidelines range and makes other sentencing

8   determinations, and the Court's reliance on such information shall not be grounds for defendant

9   to withdraw her guilty plea.

10

11  **VIII.  POSITIONS REGARDING SENTENCE**

12          **A.      No Departures or Variance from the Sentencing Guidelines**:  In consideration

13  of the parties' respective promises and benefits conferred under this Plea Agreement, neither

14  party will request a departure nor a variance from the Sentencing Guidelines sentencing range

15  as determined by the Court unless both parties agree in writing to the propriety of such a

16  departure or variance.

17          **B.      Recommendation**:  The parties will each recommend that the Court impose a

18  sentence within the Sentencing Guidelines recommended sentencing range determined by the

19  Court.  Further, the UNITED STATES will recommend that the Court impose a sentence at the

20  lower end of the Sentencing Guidelines recommended sentencing range unless defendant

21  commits any act that could result in a loss of the downward adjustment for acceptance of

22  responsibility.  Defendant acknowledges that the Court does not have to follow the parties'

23  recommendations.  Notwithstanding its agreement to recommend a low-end sentence, the

24

16

1   UNITED STATES reserves its right to defend any lawfully imposed sentence on appeal or in

2   any post-conviction litigation.

3

4   **IX.  RESTITUTION**

5          In exchange for benefits received under this Plea Agreement, defendant agrees to make

6   full restitution in an amount to be determined by the Court for all of the losses defendant caused

7   by her schemes or offenses, whether charged or uncharged, pled to or not, and by all of her

8   relevant conduct. 18 U.S.C. § 3663(a)(3). Defendant cannot discharge her restitution obligation

9   through bankruptcy proceedings.  Defendant acknowledges that restitution payments and

10  obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

11

12  **X.  FORFEITURE**

13         A.      Defendant knowingly and voluntarily agrees to the abandonment, the civil

14  administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the following

15  United States currency:

16              (1)    Twenty-five thousand eight hundred seventy-three dollars and ten cents

17                     ($25,873.10) in United States Currency; and

18              (2)    Seven thousand dollars ($7,000.00) in United States Currency.

19         B.      As part of the UNITED STATES' plea agreement with co-defendant [1]

20  CHARLES HORKY, the UNITED STATES has agreed to compromise, settle and waive its

21  demand for a monetary judgment in the sum of five million two hundred thousand dollars

22  ($5,200,000.00) if [1] CHARLES HORKY pays seven hundred fifty thousand dollars

23  ($750,000.00) in United States Currency in the form of a cashier's check payable to the United

24  States Marshals Service and delivered to the Federal Bureau of Investigation prior to his

17

1  sentencing hearing.  If [1] CHARLES HORKY fails to forfeit, tender and pay these sums prior

2  to his sentencing hearing, he has agreed to criminal forfeiture of an *in personam* money

3  judgment in the sum of five million two hundred thousand dollars ($5,200,000.00) in United

4  States Currency.  In that event, defendant [2] KIMBERLY FLORES knowingly and voluntarily

5  agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the

6  criminal forfeiture of the following property which shall be applied toward that money

7  judgment:

8      (1)  One (1) stainless steel Rolex Oyster Perpetual Date Submariner, black dial and

9          bezel, 40mm, Movement #31867604, Model #16610 T, Serial Z840628, 134

10         grams;

11     (2)  One (1) 18k yellow gold IWC Schaffhausen chronograph automatic wristwatch

12         with leather, stamped on back 2684354 INTERNATIONAL WATCH CO., two

13         sub dials, 41 mm case, 104.6 grams;

14     (3)  One (1) 18k yellow gold Rolex Oyster Perpetual Superlative Chronometer

15         Cosmograph Daytona wristwatch and band, Serial #K258882, Model #116528,

16         Band #78498, movement #C 0255271, white dial with three white sub dials

17         having gold bezels, 39mm case, 179.3 grams;

18     (4)  One (1) 18k yellow gold Cartier Pasha Chronograph date wristwatch with leather

19         band with 18k fold-over hidden clasp, Case #319453MG, presentation back,

20         38.4mm case, white dial with three sub dials and date, 108.8 grams;

21     (5)  One (1) stainless steel Girard-Perregaux Ferrari Chronograph wristwatch with

22         leather band, stamped on back with Girard-Perregaux, Ferrari, A N 853 Ref 8020,

23         Manufacture specialement pour FERRARI, black dial with prancing horse, three

24

1         black sub dials and a date window, luminous hour markers and hands, 38mm

2         case, 72.8 grams;

3    (6)   Any and all ownership interest that defendant may hold in CLS Nevada, LLC,

4         and any licenses, certificates or medallions held or used by CLS or any affiliated

5         persons, agents or entities.

6   Provided that defendant [1] CHARLES HORKY forfeits, tenders and pays $750,000.00

7   in United States currency in settlement of the forfeiture as set forth above, the UNITED

8   STATES will not seek forfeiture of substitute assets, including the licenses, certificates or

9   medallions held or used by defendant, CLS, or any affiliated persons, agents or entities,

10   and the United States will not take any position with the Nevada Transportation

11   Authority regarding the sale of such licenses, certificates or medallions. (This provision

12   does not bar the United States from providing information upon lawful request of

13   government agencies, regulatory authorities, pursuant to subpoenas, pursuant to proper

14   Freedom of Information Act requests, etc.)

15   **C.**    <u>**Forfeiture Distinct from Restitution, Assessments and Fines**</u>:   Defendant

16   understands and expressly acknowledges that the forfeiture of the property shall not be treated

17   as satisfaction of any assessment, fine, restitution, cost of imprisonment, or other penalty the

18   Court may impose upon the defendant in addition to the forfeiture.   Defendant also

19   acknowledges that the amount of the forfeiture may differ from (and may be significantly

20   greater than) the amount of restitution.

21   **D.**    <u>**Waivers**</u>:   Defendant agrees not to contest or litigate the forfeiture of the

22   property, and she agrees not to file any claim, answer, petition, or other documents in any

23   proceedings concerning the property. Further, defendant expressly waives her substantive and

24   procedural rights regarding forfeiture of the property including:

19

(1) Any trial or hearing (including any abandonment proceedings, civil administrative forfeiture proceedings, civil judicial forfeiture proceedings, or criminal forfeiture proceedings) to which she might otherwise be entitled regarding forfeiture of the property;

(2) Any further notice to defendant, her agents, or her attorney regarding the abandonment, forfeiture and disposition of the property;

(3) Service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case;

(4) Any legal or equitable defense or objection to the forfeiture of the property including, but not limited to, any defense or objection that might be brought under the statute of limitations, CAFRA, and Rules 7and 32.2 of the Federal Rules of Criminal Procedure;

(5) Any defense or objection to the forfeiture of the property under the Constitution, including, but not limited to, any defense or objection that might be brought under the Due Process Clause and Double Jeopardy Clause of the Fifth Amendment, and the Excessive Fines Clause and the Cruel and Unusual Punishments Clause of the Eighth Amendment.

E.   **Entry of Order of Forfeiture**:  Defendant knowingly and voluntarily agrees to the entry of an Order of Forfeiture of the property to the United States.  Defendant further agrees that forfeiture is immediately due and payable and subject to immediate collection by the United States.

20

1    **XI.  FINANCIAL INFORMATION AND DISPOSITION OF ASSETS**

2         Before or after sentencing, upon request by the Court, the UNITED STATES or the

3    Probation Office, defendant will provide accurate and complete financial information, submit

4    sworn statements, and/or give depositions under oath concerning her assets and her ability to

5    pay.  Defendant will surrender assets she obtained directly or indirectly as a result of her crimes,

6    and will release funds and property under her control in order to pay any fine, forfeiture, or

7    restitution ordered by the Court.

8

9    **XII.  DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS**

10        A.    **Plea Agreement and Decision to Plead Guilty:**  Defendant acknowledges that:

11             (1)  She has read this Plea Agreement and understands its terms and conditions;

12             (2)  She has had adequate time to discuss this case, the evidence, and this Plea

13                  Agreement with her attorney;

14             (3)  She has discussed the terms of this Plea Agreement with her attorney;

15             (4)  The representations contained in this Plea Agreement are true and correct,

16                  including the facts set forth in Section IV;

17             (5)  she was not under the influence of any alcohol, drug, or medicine that would

18                  impair her ability to understand the Agreement when she considered signing this

19                  Plea Agreement and when she signed it;

20             (6)  Defendant, with the advice and counsel of her attorney, had a choice to proceed

21                  to trial rather than pleading guilty, and defendant decided and chose to enter her

22                  guilty plea knowing of the charges brought against her, her possible defenses,

23                  and the benefits and possible detriments of proceeding to trial; and

24             (7)  Defendant decided to plead guilty voluntarily, and that no one coerced or

21

1            threatened her to plead guilty or enter into this Plea Agreement.

2         **B.**    <u>**Waiver of Appeal and Post-Conviction Proceedings:**</u> Defendant knowingly

3 and expressly waives:

4            (1) The right to appeal any sentence imposed within or below the Sentencing

5                 Guideline range contemplated in this Plea Agreement (while expressly reserving

6                 the right to appeal any sentence above the Sentencing Guideline range set forth

7                 in this Plea Agreement);

8            (2) The right to appeal the manner in which the Court determined that sentence on

9                 the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other

10                aspect of the conviction or sentence and any order of restitution or forfeiture;

11            (3) Any and all collateral challenges, including any claims under 28 U.S.C. § 2255,

12                to her conviction, sentence, and the procedure by which the Court adjudicated

13                guilt and imposed sentence, except non-waivable claims of ineffective assistance

14                of counsel.

15 Further, defendant agrees and acknowledges that the UNITED STATES is not obligated or

16 required to preserve any evidence obtained in the investigation of this case.

17         **C.**      <u>**Removal/Deportation Consequences**</u>: Defendant understands and

18 acknowledges that if she is not a United States citizen, then it is highly probable that she will be

19 permanently removed (deported) from the United States as a consequence of pleading guilty

20 under the terms of this Plea Agreement. Defendant has also been advised if her conviction is

21 for an offense described in 8 U.S.C. § 1101(a)(43), she will be deported and removed from the

22 United States and will not be allowed to return to the United States at any time in the future.

23 Defendant desires to plead guilty regardless of any immigration consequences that may result

24 from her guilty plea, even if the consequence is automatic removal from the United States with

1   no possibility of returning.  Defendant acknowledges that she has specifically discussed these

2   removal/deportation consequences with her attorney.

3

4   **XIII.   ADDITIONAL ACKNOWLEDGMENTS**

5        This Plea Agreement resulted from an arms-length negotiation in which both parties

6   bargained for and received valuable benefits in exchange for valuable concessions.  It

7   constitutes the entire agreement negotiated and agreed to by the parties.  No  promises,

8   agreements or conditions other than those set forth in this agreement have been made or implied

9   by defendant, defendant's attorney, or the UNITED STATES, and no additional promises,

10  agreements or conditions shall have any force or effect unless set forth in writing and signed by

11  all parties or confirmed on the record before the Court.

12                                  Daniel G. Bogden
                                                       United States Attorney
13

14  DATE  _11 June 2014_

                                         Timothy S. Vasquez

15                                                     Assistant United States Attorney

16  DATE  _5/28/2014_

17                                                     KIMBERLY FLORES
                                                       Defendant
18

19  DATE  _5/28/2014_

20                                                     Craig W. Drummond
                                                       Defense Counsel

21

22

23

24

                                        23